IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CANOPY CORPORATION AND DAVID E. JORGENSEN, Plaintiff, vs. SYMANTEC CORPORATION, Defendants. | **MEMORANDUM DECISION AND ORDER** Case No. 2:04CV629DAK |

This matter is before the court on Defendant Symantec Corporation's Motion for Summary Judgment. The court held a hearing on the motion on October 13, 2005. At the hearing, Plaintiffs Canopy Corporation and David Jorgensen ("Canopy") were represented by Brent V. Manning and Chad R. Derum, and Symantec was represented by James S. Jardine, Matthew R. Lewis, and Daren G. Mortenson. The court has carefully considered all pleadings, memoranda, and other materials submitted by the parties. The court has further considered the law and facts relevant to the motion. Now being fully advised, the court enters the following Memorandum Decision and Order denying Symantec's motion on the breach of contract claim and granting the motion in all other respects.

## BACKGROUND

This dispute arises from a Professional Services Agreement ("Agreement") between PowerQuest Corporation and Custom Contact Corporation d.b.a. Telegistics, Inc. PowerQuest was a software company that marketed several software products to companies and consumers.

Part of PowerQuest's business required the assembly and shipment of orders for its software products.  In 2001, Telegistics was a company that provided product assembly and order fulfillment services.

Before entering the Agreement with Telegistics, PowerQuest had been performing its own product assembly and shipping.  Darrell Jakins, PowerQuest's Director of Operations, was given the responsibility of identifying potential partners and negotiating a contract with the partner selected.  Jakins was a personal friend of Scott Mecham, who was a part owner of Telegistics.  Jakins and Mecham did most of the negotiations for each company in connection with the Agreement.  Paul Winn, PowerQuest's CEO and David Jorgensen, Telegistics' CEO and majority shareholder, however, were involved in some of the meetings and negotiations before the Agreement was signed.

The parties exchanged various drafts of the Agreement and drafted a provision requiring the owners of Telegistics to personally guarantee Telegistics's performance under the Agreement.  All three of the owners signed the personal guarantee provision.  During the negotiations, the parties also debated the term of the Agreement and PowerQuest's ability to terminate the Agreement for convenience.  The parties appear to agree that they both recognized that Telegistics would need to have the Agreement in place for at least one year in order to recoup start-up costs.  However the parties main dispute focuses on when termination could occur at the end of the first year.  PowerQuest claims that it wanted a long-term contract but with the possibility of a quick termination, if necessary.  Jorgensen claims that he wanted a long-term contract and both parties to be bound to the same time frame.

The term provision which the parties ultimately agreed upon provides that

> This Agreement will remain in effect from the date first written
> above for a period of five years, unless terminated earlier under the

> terms of this Agreement.  At the end of the first twelve month
> period, the Agreement will continue unless PowerQuest provides
> sixty (60) day written notice to Telegistics of its intent to terminate
> the Agreement.

The Agreement was executed on November 6, 2001, and the parties began performing under the Agreement.  PowerQuest recognizes that Telegistics' performance was satisfactory under the Agreement, with the exception of the purchasing of component parts.  A few months after the Agreement was signed, Telegistics began having financial difficulties and had trouble paying vendors of component parts and other vendors.

As a result of these financial difficulties, Jorgensen transferred Telegistics' income-producing assets to Canopy in an agreement dated December 30, 2002.  Jorgensen was the sole owner of Canopy.  Mecham and Edwards, the minority shareholders of Telegistics, did not participate in the transaction.  As part of this agreement, Telegistics assigned its rights and interests in the Agreement with PowerQuest to Canopy.  Although no formal notice was given to PowerQuest of this assignment, PowerQuest became aware that Canopy would be performing product assembly and order fulfillment for it instead of Telegistics.  PowerQuest then began paying Canopy for its services.  PowerQuest claims that the Agreement was no longer in effect after this assignment occurred but, for purposes of this motion, it is not disputing the assignment's validity or effect on the Agreement.

Approximately a year later, on December 5, 2003, Symantec acquired PowerQuest.  As part of the due diligence process for the transaction, PowerQuest provided a copy of the Agreement to Symantec.  But PowerQuest did not list the Agreement as an existing material contract in its company disclosure letter.  Jakins also informed Dee Heinz, Symantec's Logistics Director, that PowerQuest was not obligated to continue using Canopy.

In late January, 2004, Jorgensen spoke to Heinz about Symantec's use of Canopy's

services.  Heinz informed Jorgensen that Symantec intended to stop using Canopy as of February

21, 2005.  Symantec did, in fact, stop using Canopy's services as of February 21, 2004.

Symantec did not provide written notice nor did it give sixty days notice.  Canopy, however, did

not object that the termination notice was oral rather than in writing and did not demand sixty-

days notice.

Shortly thereafter, Canopy filed this lawsuit based on Symantec's termination of

Canopy's services.  Canopy's Amended Complaint alleges causes of action for breach of

contract, promissory estoppel, breach of the implied covenant of good faith and fair dealing,

promissory estoppel, and unjust enrichment/unjust detriment.

## DISCUSSION

## Symantec's Motion For Summary Judgment

Symantec seeks summary judgment on each of Canopy's causes of action. Specifically,

Symantec asks this court to grant summary judgment on Canopy's breach of contract claim

because the extrinsic evidence regarding the parties' intent at the time of contracting

unambiguously demonstrates that Symantec could terminate the Agreement at any time after the

first year.  Symantec also moves for judgment with respect to Canopy's claims for breach of the

implied covenant of good faith and fair dealing, promissory estoppel, and unjust

enrichment/unjust detriment on the grounds that they are redundant of the breach of contract

claim and fail as a matter of law.  Finally, Symantec asks this court to rule as a matter of law that

the indemnification provision in the Agreement does not allow the recovery of attorneys' fees in

a direct action between the parties.

*1.*     ***Breach of Contract Claim***

The parties' main dispute with respect to the breach of contract claim involves the proper

interpretation of the Agreement's term provision.  The term provision of the Agreement provides:

> This Agreement will remain in effect from the date first written above for a period of five years, unless terminated earlier under the terms of this Agreement.  At the end of the first twelve month period, the Agreement will continue unless PowerQuest provides sixty (60) day written notice to Telegistics of its intent to terminate the Agreement.

Symantec argues that the term provision allowed Symantec to terminate the Agreement at any time after the conclusion of the first year provided it gave Telegistics sixty-days written notice. Canopy argues that PowerQuest had to notify it of termination within sixty days of the first year of the Agreement, otherwise it was bound to the remaining four years of the Agreement. Because the parties have conflicting interpretations of the term provision, this court must determine whether the language of the term provision is ambiguous in that it could reasonably support both interpretations.

"A contract provision is ambiguous if it is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms or other facial deficiencies." *Winegar v. Froerer Corp.*, 813 P.2d 104, 108 (Utah 1991).  Under Utah law, "[w]hen determining whether a contract is ambiguous, any relevant evidence *must* be considered. . . . Although the terms of an instrument may seem clear to a particular reader – including a judge – this does not rule out the possibility that the parties chose the language of the agreement to express a different meaning." *Ward v. Intermountain Farmers Assn.*, 907 P.2d 264, 268 (Utah 1995).  "Rational interpretation requires at least a preliminary consideration of all credible evidence offered to prove the intentions of the parties . . . so that the court can 'place itself in the same situation in which the parties found themselves at the time of contracting.'" *Id.* (citation omitted).  "[A] contract provision is not necessarily ambiguous just because one party gives that

provision a different meaning than another party does." *Plateau Mining Co. v. Utah Div. of State Lands & Forestry*, 802 P.2d 720, 725 (Utah 1990). "The contrary positions of the parties must each be tenable." *Id.*

"If after considering such evidence the court determines that the interpretations contended for are reasonably supported by the language of the contract, then extrinsic evidence is admissible to clarify the ambiguous terms." *Ward*, 907 P.2d at 268. All relevant evidence of the parties' intent must be considered because "[i]n construing a contract, the intention of the contracting parties is controlling." *Peterson v. The Sunrider Corp.*, 48 P.3d 918, 925 (Utah 2002).

A court's determination of whether an agreement is ambiguous is a question of law. *Gillmor v. Macey*, 2005 UT App. 351, ¶ 9 (citation omitted). If the court finds an ambiguity in the Agreement, however, the subsequent determinations as to the intentions of the parties based on the extrinsic evidence are questions of fact. *Id.* at ¶ 10. "'[A] motion for summary judgment may not be granted if a legal conclusion is reached that an ambiguity exists in the contract and there is a factual issue as to what the parties intended.'" *WebBank v. Am. Gen. Annuity Serv. Corp.*, 2002 UT 88, ¶ 22.

In this case, Symantec argues that the extrinsic evidence demonstrates that the term provision unambiguously supports its interpretation and, even if the court considers the provision ambiguous, there are no material issues of fact as to the parties' intent at the time of contracting regarding the term provision. Canopy asserts that there is no need to examine extrinsic evidence because the term provision is clear on its face but, if the court considers extrinsic evidence, there are material issues of fact as to the parties' intent.

Based on an examination of the term provision's language, the court finds that neither

6

party's interpretation is mandated by the plain language.  The language is ambiguous as to when

PowerQuest was required to or could give written notice.  The provision can reasonably be read

that at the end of the first twelve-month period the Agreement would continue without any other

action until such time as PowerQuest provided a sixty-day written notice.  However, one could

also reasonably read the Agreement to mean that it would continue for the full five-year term

unless PowerQuest provided a sixty-day written notice right "at" the end of the first twelve-

month period.  While the use of the word "at" could be a reference to the exact time that

PowerQuest was supposed to take action, it is far from clear.  In the colorful language of Judge

Orme

> The Agreement in this case is hardly a model of precision in legal
> drafting.  Instead, it is an example of the type of written instrument
> that often earns itself an expensive trip to the courthouse . . . where
> many other contracts have been memorialized for spurring dispute
> rather than promulgating certainty and finality.

*Gillmor*, 2005 UT App. at ¶ 11.  Therefore, the court must examine the extrinsic evidence to

determine whether it clarifies the ambiguities in the plain language.

Although Canopy asserts that the court need not examine extrinsic evidence because both

parties claim that the contract unambiguously supports its interpretation, the court concludes

that, under the dictates of Utah law discussed above, it must examine such evidence to determine

whether the language is capable of supporting the parties' competing interpretations.  *See Ward*,

907 P.2d at 268 ( "When determining whether a contract is ambiguous, any relevant evidence

*must* be considered.); *Novell Inc. v. The Canopy Group*, 92 P.3d 768, 774 (Utah Ct. App. 2004)

("To determine whether a contract term is ambiguous, a court may look to all the attendant

circumstances surrounding the execution of the document.").

Canopy also argues that the Agreement's merger clause forbids the consideration of

extrinsic evidence.  The merger clause states that the Agreement supersedes any prior or contemporaneous oral or written representations with regard to the subject matter of the Agreement and, in the case of any conflict, the Agreement shall control.  However, the court does not believe that the existence of a merger clause precludes the framework for contract interpretation set out by Utah courts.

In support of its claim that the extrinsic evidence makes its interpretation of the term provision unambiguous, Symantec relies on the fact that the two individuals who principally negotiated and drafted the Agreement agree that the intended meaning of the provision was that advanced by Symantec.  Jakins, who negotiated on behalf of PowerQuest, testified that it was his understanding that at the end of one year PowerQuest could terminate anytime thereafter. Mecham, who negotiated on behalf of Telegistics, testified that the parties agreed on a term provision that required both parties to stay in the Agreement for a one year period, after which it was agreed that PowerQuest would have the right to terminate by giving Telegistics sixty days notice.  Winn, PowerQuest's CEO,  and Edwards, the other minority shareholder in Telegistics, also testified that they understood that the term provision allowed PowerQuest to terminate the Agreement for any reason after the first year.

Jakins and Mecham testified that the rationale behind the term provision was to require PowerQuest to be locked into the Agreement for a year in order to allow Telegistics to recoup most of the costs of the equipment leases that Telegistics assumed in connection with the Agreement.  The term provision also accommodated Winn's demand that PowerQuest have a long-term contract with a short-term out.

Canopy questions the credibility of this extrinsic evidence because Jakins and Mecham are personal friends who did business together before the Agreement was negotiated and who

have done business together since Mecham left Telegistics.  Canopy also questions Mecham's testimony based on the grounds that he has spoken to Jakins about this lawsuit, he has met with Symantec's counsel on several occasions, he was represented at his deposition by a lawyer arranged by Symantec at no cost to him, he was given an outline from Symantec of testimony given in prior depositions, and he has referred to an undisclosed "common interest" with Symantec.

To support its competing interpretation of the provision, Canopy relies on a Contract Summary Sheet prepared by PowerQuest's legal department that specifies the term of the Agreement as five years with an expiration date of November 1, 2006, and states that "PQ must provide written notice by 9-1-02 (60 days from renewal date) if it does not wish to continue with the remainder [sic] four-year commitment."  Symantec, however, has demonstrated that the Contract Summary Sheet was prepared by a paralegal in PowerQuest's legal department who had not spoken with Jakins regarding the Agreement before she prepared the summary.  Therefore, this summary has little, if any relevance, to the intent of either party at the time of contracting.

Canopy, however, further asserts that while Mecham participated in much of the negotiations, Jorgensen participated in the last meaningful negotiation meeting on the Agreement and his comments at the meeting demonstrate that he required an agreement in the form similar to the interpretation he and Canopy advance.  Symantec claims that Jorgensen's testimony alone does not create an issue of material fact because he is the only individual to testify to Plaintiffs' version of the contract and he is the only one who stands to profit from this lawsuit.  Symantec further contends that Mecham had actual and apparent authority to negotiate the Agreement on behalf of Telegistics.  But Canopy contends that Jorgensen repeatedly stated that he wanted the agreement to bind the parties to the same term and that if he had to give a personal guarantee in

order for that to happen, he was willing to do so.  Furthermore, Canopy argues that Mecham's authority as the negotiator is irrelevant because Jorgensen, himself, made it clear to PowerQuest the type of Agreement that he would accept.

Furthermore, the parties dispute whether their interpretations are consistent with practices in the software manufacturing business.  Several witnesses testified that long-term contracts are not used in the industry.  PowerQuest  has only one two-year contract, and Canopy apparently does not have a contract with a term longer than one year.  Canopy, however, argues that the parties agreed to be bound to a longer contract term because of the personal guarantees required of Telegistics's owners, which are also unusual in the industry.

The court concludes that there is extrinsic evidence supporting both interpretations of the provision.  For example, there is evidence that PowerQuest wanted the ability to terminate at any time after Telegistics recouped its attendant costs and that a short-term agreement is typical in the industry.  However, there is also evidence that it was unusual to require personal guarantees and the guarantees were executed in this case so that PowerQuest would agree to be bound to a long-term contract.  There are also questions as to Mecham and Jorgensen's roles in the negotiations on behalf of Telegistics.  Based on this conflicting extrinsic evidence, the court concludes that language of the Agreement's term provision is ambiguous.

Once the court determines that the contract is ambiguous, it must proceed to consider the extrinsic evidence regarding the parties' intentions at the time of contracting.[1]  While, in the court's view, the extrinsic evidence regarding the parties' intent at the time of contracting strongly favors Symantec's reading of the term provision, the court cannot conclude as a matter

_____

[1]  Although the relevant time frame for analyzing this issue is the parties intent at the time of contracting, it is curious that the parties have not submitted any correspondence or evidence of communications between them at the one-year mark.

of law that no reasonable jury could conclude otherwise.  Symantec asks the court to discount the credibility of Jorgensen's testimony, and Canopy asks the court to discount the credibility of Mecham's testimony.  A court cannot engage in such credibility determinations at the summary judgment stage.  These determinations must be made at trial.  Therefore, the court concludes that there are issues of material fact regarding the parties' intent at the time of contracting with respect to the Agreement's term provision.  Accordingly, the court denies Symantec's motion for summary judgment on Canopy's breach of contract claim.

**2.**     ***Breach of the Implied Covenant of Good Faith and Fair Dealing***

Canopy alleges that Symantec breached the implied covenant of good faith and fair dealing by "refusing to comply with the terms of the Agreement," and through its "repudiation of the Agreement and [its] numerous representations to Canopy regarding the exclusive nature of the Agreement."  Symantec argues that this claim presents no separate basis for liability because it is entirely duplicative of Canopy's breach of contract claim.

Canopy asserts that Symantec has breached the implied covenant of good faith and fair dealing because it improperly terminated the Agreement and did not allow Canopy to receive the fruits of the contract.  Even if Symantec was entitled to terminate "any time" after the first year, Canopy contends that it is undisputed that Symantec never gave the sixty-day written notice required to terminate the Agreement.  Therefore, Canopy claims that Symantec's actions evidence not merely a breach of the Agreement's terms but a fundamental disdain for its obligations not to do anything to injure Canopy's right to receive all of the benefits provided to it under the Agreement.

Canopy's arguments, however, rest solely on Symantec's termination of the Agreement.  Such actions can be redressed by the breach of contract claim.  To state a separate claim, Canopy

must demonstrate some implied promise separate from a breach of the Agreement's term

provision that could support this cause of action.  Canopy's claim that Symantec's failure to

provide a written, sixty-day notice is also a breach of the term provision, not the breach of an

implied covenant.  If this court finds that Symantec did not have the right to terminate the

Agreement after the first year, Canopy would be entitled to recover for breach of contract and its

claim for breach of the covenant of good faith and fair dealing would be redundant.  If, on the

other hand, Symantec did have the right to terminate the relationship with Canopy at anytime

after one year, then there could not be a breach of the contract or a breach of the covenant of

good faith and fair dealing as it has been pled by Canopy.  The court concludes that Canopy's

claim for breach of the covenant of good faith and fair dealing is redundant of its breach of

contract claim.  The court, therefore, grants Symantec's motion for summary judgment with

respect to Canopy's breach of the covenant of good faith and fair dealing claim.

**3.      *Promissory Estoppel***

Canopy's promissory estoppel cause of action is based on Defendant's alleged "promise

to engage in an exclusive business relationship for a period of five years subject to an expired

termination right."  Am. Compl. ¶ 58.  In Utah, promissory estoppel includes four elements:

> (1) the [promisee] acted with prudence and in reasonable reliance
> on a promise made by the [promisor]; (2) the [promisor] knew that
> the [promisee] had relied on the promise which the [promisor]
> should reasonably expect to induce action or forbearance on the
> part of the [promisee] or a third person; (3) the ]promisor] was
> aware of all material facts; and (4) the [promisee] relied on the
> promise and the reliance resulted in a loss to the [promisee].

*J.R. Simplot v. Sales King Int'l, Inc.*, 2000 UT 92 ¶ 29.  Promissory estoppel "relates primarily to

those informal contracts which lack consideration but where, because of the facts surrounding

the transaction, injustice can only be avoided by enforcing the promise."  *A.A. Easton v. Wycoff*,

295 P.2d 332, 333 (Utah 1956).  Canopy asserts that in the event the court finds that the

Agreement is not enforceable, it is entitled to recover under its promissory estoppel claim.

Symantec argues that Canopy's claim fails because it has not identified any other specific

promises upon which it allegedly relied and that any alleged reliance on an oral promise that

contradicted the express terms of the Agreement would be unreasonable as a matter of law.

Symantec further argues that there could be no reasonable reliance on a five-year term because,

under either parties' interpretation of the Agreement, PowerQuest had the right to terminate the

Agreement after one year.  Canopy asserts that even if Symantec prevails on its argument that it

was only obligated to perform for one year, it can still prevail on the promissory estoppel claim

because it reasonably prepared for a five-year relationship.  In reliance on the representation of a

five-year agreement, Canopy contends that Telegistics assumed several financial obligations and

Jorgensen gave PowerQuest a personal guarantee.

The court, however, cannot conclude that Canopy could reasonably rely on a five-year

agreement.  Under both parties' interpretations of the Agreement's term provision, PowerQuest

had a right to terminate after one year.  There was no promise of a five-year relationship in the

Agreement nor has Canopy demonstrated the existence of a promise independent of the

Agreement.  "[A] promisee must support a promissory estoppel claim with more than a

subjective understanding of the promisor's statements."  *J.R. Simplot v. Sales King Int'l, Inc.*,

2000 UT 92 ¶ 29.  Therefore, any reliance on a five-year term was unreasonable as a matter of

law.

Although the Utah Supreme Court has "decline[d] to address the issue [of] whether,

given the existence of [a] contract between the parties, promissory estoppel constitutes a valid

claim for relief," it reversed a trial court's award of damages on a theory of promissory estoppel

finding that the alleged promises "were merely the promises that were included in the written contract." *Skanchy v. Calcados Ortope SA*, 952 P.2d 1071, 1077-78 (Utah 1998).  Canopy has not identified any promise upon which it allegedly relied other than the promise of a five-year relationship it claims was contained in the Agreement.  Moreover, it is undisputed that PowerQuest performed under the Agreement for more than one year.  Canopy's promissory estoppel claim, therefore, fails as a matter of law.  Accordingly, the court grants Symantec's motion for summary judgment with respect to Canopy's promissory estoppel cause of action.

**4.**     ***Unjust Enrichment/Unjust Detriment Claim***

Canopy further alleges that in the absence of an enforceable contract, it can recover on its unjust enrichment/unjust detriment claims.  To prevail on a claim for unjust enrichment, Canopy must show that they conferred a benefit on PowerQuest and/or Symantec, that PowerQuest and/or Symantec had knowledge of the benefit, and PowerQuest and/or Symantec retained those benefits under circumstances that make it inequitable to retain that benefit without compensating Canopy for their value.  *Desert Miriah, Inc. v. B&L Auto, Inc.*, 2000 UT 83, ¶ 13; *L&A Drywall, Inc. v. Whitmore Constr. Co.*, 608 P.2d 626, 630 (Utah 1980) ("Unjust enrichment occurs whenever a person has and retains money or benefits which in justice and equity belong to another.").  Symantec argues that summary judgment should be granted on Canopy's unjust enrichment/unjust detriment claim because neither Symantec nor PowerQuest received any unjust benefit and there was no unjust detriment to Canopy.

Canopy argues that the relevant benefit under this claim is not the sufficiency of the price paid during the parties relationship, but the benefits accruing to PowerQuest and Symantec as a result of Canopy's detrimental reliance on the expectation of having a five-year relationship.  To support this argument, Canopy claims that it conferred a direct benefit on PowerQuest when it

created the service infrastructure to meet PowerQuest's needs for five years, such as assuming PowerQuest's lease obligations, incurring expenses associated with leasing additional warehouse space, and hiring additional employees to provide services to PowerQuest. Canopy also asserts that Jorgensen conferred a direct benefit on PowerQuest when he executed a personal guarantee to ensure Telegistics's continuing ability to service PowerQuest. Without Canopy's reliance on a five-year relationship, it claims that PowerQuest would have never realized the significant monetary savings that it did each year as a result of outsourcing to Telegistics. Canopy further contends that its services enhanced PowerQuest's attractiveness as a merger target. In light of these contributions, Canopy claims it would be unjust to allow PowerQuest to retain the benefits of Canopy's efforts without compensating Canopy for the damages it incurred in bestowing those benefits.

As discussed under the previous claims, however, the court does not find it reasonable as a matter of law for Canopy to have relied on having a five-year relationship under the Agreement. Under either reading of the Agreement, PowerQuest had the right to terminate at the end of the first year. Even if the parties do not agree that the one-year provision was included in the Agreement as a means to allow Telegistics to recoup its costs, Telegistics agreed to allow termination to occur after one year. Canopy's arguments that it detrimentally relied on the expectation of a five-year contract would effectively rewrite the Agreement. It is undisputed that together PowerQuest and Symantec performed under the Agreement for twenty-eight months.

Furthermore, Canopy has not demonstrated that to the extent it conferred benefits upon PowerQuest and/or Symantec, such benefits were wrongfully retained. Canopy must demonstrate that it would be inequitable for Symantec to retain those benefits. PowerQuest and Symantec paid Telegistics and Canopy at the prices freely negotiated in the Agreement for all of

the work that Telegistics and Canopy performed.  "[T]here can be no valid claim of unjust enrichment where a party has given fair consideration or value for the benefits obtained."  *Soules v. Ramstack*, 95 P.3d 933, 940 (Alaska 2004).  Therefore, Canopy must demonstrate that the benefits it conferred upon PowerQuest and/or Symantec were not already compensated for through the payments PowerQuest and Symantec made to Canopy under the Agreement.

The parties do not dispute that Jorgensen's personal guarantee was required by PowerQuest before entering the Agreement.  But Canopy has not demonstrated how the value of that guarantee was not compensated for through the award of the Agreement and the payments made under the Agreement.  Even if Jorgensen poured money into the operation to keep it running and to fulfill the services under the Agreement, there is no evidence that this was not contemplated by and agreed upon in the Agreement.  And, nothing indicates that such conduct created a benefit that was wrongfully retained by PowerQuest.  Rather, the personal guarantee appears to be a benefit for which it contracted.

PowerQuest's realization of yearly savings based on outsourcing is another alleged benefit that is necessarily tied to the price negotiated by the parties under the Agreement.  If the savings to PowerQuest from outsourcing were worth more to PowerQuest than the agreed upon terms in the Agreement, Canopy should have negotiated for a higher price under the Agreement.  Canopy appears to be seeking a better contract than it negotiated for itself.  There is also no indication that this alleged benefit from outsourcing would have continued past the date that Symantec terminated the Agreement in order for it to be wrongfully retained or not compensate for under the Agreement.

The court further finds that Canopy cannot prove the value of an esoteric benefit such as its contribution to PowerQuest's attractiveness as a merger target.  Canopy's role in making

PowerQuest an attractive merger target is speculative and, to the extent that it relies on PowerQuest's yearly savings from outsourcing, it is similarly attendant to the price paid under the Agreement for Canopy's services.  The court, therefore, concludes that Canopy has not demonstrated that if there is found to be no Agreement in this case, that it has conferred a benefit upon PowerQuest and/or Symantec for which it has not already received compensation from PowerQuest and Symantec under the Agreement.  Accordingly, the court grants Symantec's motion for summary judgment with respect to Canopy's unjust enrichment/unjust detriment claim.

5.      ***Attorneys' Fees for Breach of Contract***

Symantec argues that the Agreement's indemnification provision does not allow Canopy to recover attorneys' fees for a breach of contract claim made directly by Canopy against Symantec because Canopy's claim does not involve a third party.  The relevant provision in the Agreement is entitled "Indemnification" and provides, in relevant part, as follows:

> PowerQuest agrees to indemnify, hold harmless, and defend Telegistics from all claims, damages, costs and expenses (including reasonable attorneys' fees) that arise from the negligence or willful misconduct of PowerQuest or PowerQuest's personnel in performing services under this Agreement, or from PowerQuest's breach of any of the terms of this Agreement.

Utah courts follow a rule of strict construction when interpreting an indemnity agreement.  *CIG Exploration v. Hill*, 824 F. Supp. 1532, 1541 (D. Utah 1993).  Under this strict construction rule, a party is contractually obligated to assume ultimate financial responsibility for the acts of another "only when that intention is clearly and unequivocally expressed" in the contract.  *Union Pac. R.R. v. El Paso Natural Gas Co.*, 408 P.2d 910, 914 (Utah 1965).

Canopy contends that the indemnification provision unambiguously expresses that PowerQuest must indemnify Telegistics for all expenses, including attorneys' fees, that arise

from PowerQuest's breach of any terms of the Agreement.  Symantec acknowledges that the term "indemnify" can apply to any loss or damage, however, it asserts that the term "defend" clearly indicates that the provision refers to and requires an action against Canopy by a third party.

Although there are no cases dealing with an identical provision, both parties refer the court to several cases addressing the issue of whether a contractual provision allows a party to receive attorneys' fees for a direct action between the parties or only third-party actions.  The court finds most of the cases cited to be unhelpful based on the differences in the language of the provisions at issue.

In the case of *Atari Corp. v. Ernst & Whinney*, 981 F.2d 1025 (9th Cir. 1992), cited by Canopy, the contractual provision was much broader than the provision in this case.  The provision used only the term "indemnify," rather than "indemnify, hold harmless, and defend," and stated that the indemnification applied to "all acts" and was to be "to the fullest extent permitted by applicable law."  *Id.* at 1031.  Even more significantly, the provision was construed under Delaware law, which in direct contrast to Utah law, construes indemnification provisions liberally.  *Id.* at 1032.  The court's requirement to give a liberal construction to a provision that used only the term indemnify makes its analysis inapposite to the present case.

Similarly, two other cases allowing attorneys' fees in direct actions between the parties, *Litton Microwave Cooking Products v. Leviton*, 15 F.3d 790 (8th Cir. 1994), and *Norwest Bank Minnesota, N.A. v. Sween Corp.*, 916 F. Supp. 1494 (D. Minn 1996), construe provisions that are factually distinct from the provision in this case because they do not include the term "defend." Because the provisions at question contained only the terms indemnify and hold harmless, these cases are not persuasive to the court's determination.

18

This court is charged under Utah, not only with giving the indemnification provision a narrow reading, but also with interpreting the contract "so as to harmonize all of its provisions and all of its terms, which terms should be given effect if it is possible to do so." *L.D.S. Hospital v. Capitol Life Ins. Co.*, 765 P.2d 857, 858 (Utah 1988). "[T]o harmonize the provisions of a contract, '[courts] examine the entire contract and all of its parts in relation to each other and give a reasonable construction of the contract as a whole to determine the parties' intent.'" *Gillmor v. Macey*, 2005 UT App 351, ¶ 19 (citation omitted).

In this case, the parties' use of the term "defend" necessarily narrows the sweep of the indemnifying language. The use of the word "defend" indicates that the parties intended the provision to apply only to third-party claims because the word would have no effect in a direct action between the parties. Obviously, in a direct action between the parties, neither party would be interested in tendering its defense or being defended by the other party.

The only case cited by the parties that construes a provision including the word "defend" also concluded that the provision applied only to third-party actions. *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199-200 (2d Cir. 2003). In that case, the Second Circuit relied, in part, on the decision in *Hooper Assoc., Ltd. v. AGS Computers, Inc.,* 74 N.Y.2d 487, 492, 548 N.E.2d 903 (N.Y. 1989), which "reasoned that '[t]o extend the indemnification clause to require defendant to reimburse plaintiff for attorney[s'] fees in the breach of contract action against defendant would render these provisions meaningless because the requirement of notice and assumption of the defense has no logical application to a suit between the parties.'" *Hollander*, 337 F.3d at 200 (quoting *Hooper*, 548 N.E.2d at 492-93). As in these cases, the court concludes that "construing the indemnification clause 'as pertaining only to third-party suits affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision

without force and effect.'" *Id.*

Canopy asserts that construing the provision to apply only to third-party claims is illogical because a third party, who is not a signatory to the contract, could not have a claim against either of the parties to the contract for breach of contract. However, this language clearly can apply to situations in which Symantec's breach of the contract caused Canopy to be sued by a third party. Therefore, the court does not find the construction illogical.

Given the strict construction the court must give the provision, the court concludes that the indemnity provision does not clearly and unequivocally allow Canopy to recover attorneys' fees for a direct claim for breach of contract against Symantec. Rather, the court concludes that the indemnification provision in this case, when read as a whole, demonstrates that Canopy may only recover from Symantec for claims brought against it by third parties. Accordingly, the court grants Symantec's motion for summary judgment with respect to Canopy's ability to recover attorneys' fees under its breach of contract claim.

## CONCLUSION

Based on the above reasoning, Symantec's Motion for Summary Judgment GRANTED IN PART and DENIED IN PART. Specifically, Symantec's motion is GRANTED with respect to Canopy's claims for breach of the covenant of good faith and fair dealing, promissory estoppel, unjust enrichment/unjust detriment, and attorneys' fees under the breach of contract claim. However, Symantec's motion is DENIED as to Canopy's breach of contract claim

because there is a material issue of fact as to the parties' intent at the time of contracting

regarding the Agreement's term provision.

DATED this 20th day of October, 2005.

_____
DALE A. KIMBALL
United States District Judge